Duane JOHNSON, Appellant,

v.

**BENBROOK WATER AND SEWER AUTHORITY, Appellee.**

No. 16773.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 16, 1966.

Rehearing Denied Jan. 27, 1967.

Pannell, Hooper, Steves & Kerry and Henry E. Kerry, Fort Worth, for appellant.

Jacobs, Lipscomb & Renfro, Lindley D. Eakman and Cue Lipscomb, Fort Worth, for appellee.

OPINION

LANGDON, Justice.

This is a suit for declaratory judgment pursuant to Article 2524-1, Vernon's Ann. Tex.St., and an ancillary writ of mandamus. It contains a prayer for refund of all monies expended for extension of water and sewer services to an addition. It was tried to the court without a jury and resulted in judgment denying all relief sought by the plaintiff (appellant).

The appellant by his points 1-37 contends that he has been denied substantive and procedural due process and equal protection of the law. Points 38-42 relate to tap fees, 43-46 his damages and 47 through 49 to the appropriateness of the relief sought by him.

We affirm.

Findings of fact and conclusions of law were made and filed as follows: "1. The Defendant, Benbrook Sewer and Water Authority, was created as a governmental agency and a body politic and corporate under and by virtue of Article 8280-163 of Vernon's Annotated Civil Statutes of Texas, which Article was an act passed by the 54th Legislature of this State in 1955.

"2. The Defendant obtains its authority and powers to operate under Article XVI, Section 59 of the Texas Constitution, [Vernon's Ann.St.] and from the above mentioned Article creating said Defendant, and it possesses all of the rights, power and

privileges conferred by the General Laws of this State applicable to water control and improvement districts created under the above mentioned Article and Section of The Texas Constitution.

"3. At the time of its creation, the Defendant's boundaries were identical with those of the village of Benbrook, Tarrant County, Texas.

"4. The Plaintiff, Duane Johnson, is a person primarily engaged in purchasing, sub-dividing, improving and reselling real estate located within the Defendant's boundaries, and he has been so engaged since before the Defendant was created.

"5. Shortly after its creation, the Defendant duly adopted a policy of requiring all builders, sub-dividers and developers, of which Plaintiff was one, to pay the entire cost of extending the Defendant's existing sewer and water systems to and through any new area being developed by such developer and for which the developer had requested water and sewer service from the Defendant. Such planned extensions of the Defendant's systems were required to be designed or approved by the Defendant's engineer, and prior to the commencement of construction of such extensions the developer was required to deposit the entire cost thereof with the Defendant. The actual extension is accomplished in the name and by authority of the Defendant; and upon completion of construction and acceptance by the Defendant; it is expressly understood that the title to the extension vests in the Defendant.

"6. In addition to the extensions of the Defendant's systems which are under its policies required to be paid by developers such as Plaintiff, the Defendant has at all times paid the entire cost of other substantial capital improvements necessary to provide and maintain adequate water and sewer service for persons residing within its boundaries; all of such additional capital improvements being paid for by Defendant without contribution from developers. Such capital improvements in-

clude but are not limited to water supply, treatment and storage facilities, large trucks, distribution and collector lines and sewerage treatment facilities. In addition to such capital improvements, the Defendant also bears the entire cost of maintaining and replacing all facilities, whether initially paid for by developers or by the Defendant.

"7. Even with the developers paying for the extensions required of them under the Defendant's policies and procedures, the Defendant has steadily increased its indebtedness since its creation.

"8. The extensions which the Defendant's policies require developers to pay for have some of the characteristics of both an asset and a liability. Although each such extension provides the Defendant with additional customers, the Authority also at the same time receives water and sewer systems which must be maintained. Also, the water lines must be kept supplied with water and the sewerage collected must be treated and disposed of.

"9. The Plaintiff has purchased, developed and resold land within the Defendant's boundaries on many occasions before the development which is the subject of this lawsuit, and the extensions of water and sewer lines to such areas previously developed by Plaintiff were accomplished under the same policies and procedures of which he complains in the case at bar.

"10. The Plaintiff is the owner, subdivider and developer of a tract of land known as Blocks 56, 57, and 58 and portions of Blocks 54 and 55 in Lakeside Addition to the City of Benbrook, Tarrant County, Texas, the development of which tract is the subject matter of this lawsuit, and all of which land is located entirely within the territorial limits and boundaries of the Benbrook Sewer and Water Authority.

"11. On June 1, 1965, the Plaintiff made a formal application through his attorney asking the Defendant to make an exception to said Defendant's policies and procedures

by either paying for the entire cost of extending water and sewer lines into the above described area or to reimburse Plaintiff in whole or in part in the event he was required to pay for the extension. At the same time, the Plaintiff also requested that the "tap fee" which is charged by the Defendant for each connection to cover the cost of obtaining and installing a meter be waived for the Plaintiff.

"12. The Defendant, acting by and through its Board of Directors considered the Plaintiff's request and through its counsel notified Plaintiff and Defendant declines to make any exception to its policies and procedures as requested by Plaintiff.

"Thereafter, as required by Defendant's said policies, Plaintiff deposited the sum of $5,214.00, the entire cost of extending the water and sewer facilities, which are also the subject matter of this lawsuit. Contemporaneously with the deposit of said sum by Plaintiff with Defendant, Plaintiff executed the required Developer-Authority agreement regarding the involved extension and notified the Defendant that such contract was being executed and such deposit made without prejudice to his right to obtain the reimbursement he had previously requested of the Defendant.

"13. Thereafter, the subject extensions of water and sewer lines into the area involved were made in the name and by authority of the Defendant and such extension was paid for by Defendant using the sum deposited by Plaintiff.

"14. The Plaintiff, as a sub-divider and developer, customarily pays the entire cost of the paving of streets and the installation of curbs and gutters in areas developed by him, and amounts expended for such purposes are added to his expense in extending water and sewer lines into such areas. The total of such expenditures by Plaintiff is customarily divided by the number of tracts of land to be sold within such improved area and added to the sale price of such tracts.

"It is uncontradicted that the extensions of water and sewer facilities, like the curbs, gutters and paved streets, increases the value of the tracts of property located within the area so developed.

"15. It is also uncontradicted that the Plaintiff had prior to trial of this case already recovered in the sale price of each tract of property which had been previously sold within the involved area the pro rata share of the total cost of extending the water and sewer systems into said area allocable to each of said tracts. The Plaintiff also testified that he will recover the remainder of his cost regarding such water and sewer extensions when the remaining tracts within the developed area are sold.

"16. None of the persons to whom the cost of these water and sewer extensions have been shifted by Plaintiff are parties to this lawsuit.

"17. In addition to the fact that the same policies and procedures here complained of by Plaintiff have been previously applied to him, the same policies have been uniformly applied to other persons who have developed property within the Defendant's boundaries.

"18. Regarding the tap fee charged by Defendant to cover the cost of purchasing and installing water meters in developed areas, which fee is also complained of herein by Plaintiff, such fee has been uniformly paid by developers since the Defendant's creation, except that such fee was waived by the Defendant, for the Plaintiff only, during the infancy of the village of Benbrook in order to encourage speedier sub-division and development of property.

"19. The Plaintiff was not damaged, irreparably or otherwise, by the Defendant's action herein complained of, nor will he be so damaged thereby.

"CONCLUSIONS OF LAW

"1. The Defendant was authorized under the statutes creating Benbrook Water & Sewer Authority, the general law per-

taining to water control and improvement districts and under the Constitution of the State of Texas to adopt the rules and regulations herein complained of by Plaintiff.

"2. The Plaintiff is not entitled to a Writ of Mandamus under the facts of this case, because the matters complained of by Plaintiff are discretionary in nature.

"3. The Plaintiff is not entitled to a Declaratory Judgment as prayed for by said Plaintiff, under the facts of this case.

"4. The Defendant's policies and procedures which have been in effect at all times material to this law suit are not arbitrary, unreasonable, capricious and/or discriminatory.

"5. There has been no discrimination in the manner in which the Defendant's policies and procedures have been applied to the Plaintiff.

"6. There has been no confiscation of Plaintiff's property by Defendant without due process of law.

"7. The Plaintiff has not been denied by Defendant equal protection of the law.

"8. The Defendant's action herein complained of by Plaintiff does not amount to an abuse of discretion on the part of said Defendant." As to findings by the court and its conclusions of fact and law see Rules 296–299, Texas Rules of Civil Procedure, both inclusive, and authorities cited thereunder. There is competent evidence to support the court's findings and its judgment.

Admittedly, most of the facts of this case are undisputed. It occurs to us that there is only one question to be resolved and that simply stated is whether or not the appellee has the constitutional and statutory authority to require the developer to extend the water and sewer extensions at his own expense. We are of the opinion that the trial court did not err in holding that it does have such authority.

The appellant presents the question to be adjudicated in much the same language as follows: "Does the policy of the authority in requiring a developer to pay the entire cost of water and sewer extensions into a new area without compensation and without reimbursement constitute an appropriation or a taking of the developer's property without due process of law, and does the implementation of that policy to the developer in this case deny to him equal protection of the law?" We think not.

City of Snyder v. Bass, 360, S.W.2d 426 (Eastland Civ.App., 1962, Ref., n. r. e.); Hightower v. City of Tyler, 134 S.W.2d 404 (El Paso Civ.App., 1939, ref.); Moser v. Greenland Hills Realty Co., 300 S.W. 177 (Dallas Civ.App., 1927, ref.); see also 48 A.L.R.2d 1224 and cases cited. All points of error are overruled and judgment of the trial court is in all things affirmed.